# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 973 | **DATE** | August 26, 2004 |
| **CASE TITLE** | Khan v. Ashcroft, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry] For the reasons stated on the attached memorandum opinion, defendants' motion to dismiss [3-1] is granted.  The case is dismissed for lack of subject matter jurisdiction.

(11)  ☐  [For further detail see order on the reverse side of the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | Document Number |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | AUG 2 7 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| AMM | courtroom deputy's initials | | 2004 AUG 26 PM 4:50 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SHAHIMA KHAN, | ) | **DOCKETED** |
| | ) | |
| Plaintiff, | ) | AUG 2 7 2004 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN ASHCROFT, as ATTORNEY GENERAL | ) | No. 03 C 973 |
| OF THE UNITED STATES, BRIAN | ) | |
| PERRYMAN, as DISTRICT DIRECTOR, | ) | |
| CHICAGO DIVISION OF THE | ) | |
| IMMIGRATION AND NATURALIZATION | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the court is defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. For the reasons stated below, the motion is granted.

**BACKGROUND**

Plaintiff Shahima Khan brings this action against defendants John Ashcroft, Attorney General of the United States, and Brian Perryman, District Director of the Chicago Division of the Immigration and Naturalization Service ("the INS"), seeking to compel these defendants to reopen her application under the INS's Diversity Visa Program and to grant her legal permanent resident status.

**A.      The Diversity Visa Program**

The Diversity Visa Program ("the DV Program" or "the Program") was instituted by Congress in 1990 to provide a limited number of visas to individuals from countries that historically have had low rates of immigration to the United States. <u>See</u> 8 U.S.C. § 1153(c). A "diversity visa" (immigrant visas issued through the Program) qualifies its recipient as a lawful permanent resident of the United States.

Program applicants are selected through a random lottery system administered by the State Department. These selected applicants – commonly referred to as DV Program "lottery winners" – are notified by letter of their selection and receive instructions on how to apply for a diversity visa. A "winner," however, is not guaranteed to receive a visa; lottery selection only ensures eligibility to apply for one. <u>See</u> 8 U.S.C. § 1153(e)(2). This is because the number of individuals selected to apply for a visa far exceeds the number of visas actually available under the Program. Once an individual is selected, that individual's spouse and children under the age of twenty-one are eligible to apply for visas as well. <u>See</u> 8 U.S.C. § 1153(d). The application process is lengthy: the applicant must submit numerous documents to the National Visa Office (including a passport, a birth certificate, police certificates, court records, prison records, military records, and evidence of either education or work experience) and attend a visa interview. <u>See</u> 8 U.S.C. § 1202.

Lottery winners who are already lawfully present in the United States may apply to the INS to adjust his or her status to that of a lawful permanent resident. See 8 U.S.C. § 1255. The Attorney General may then, in his discretion, adjust the applicant's status, provided: (1) the alien makes an application for adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible for permanent residence, and (3) a visa is immediately available to the alien at the time the application is filed. See id.

Finally, and significantly, the DV Program operates on a fiscal calendar and the visas allocated under the Program are only available for one fiscal year. So, for example, an applicant selected to participate in the 2001 program had from October 1, 2000 to September 30, 2001 to complete the process, both application and adjudication, before time expired on his or her application. See 8 U.S.C. § 1154(a)(1)(I)(ii)(II) ("Aliens who qualify, through random selection, for a visa under [the Program] shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected.").

**B.      Shahima Khan's Application for Permanent Residency[1]**

Khan is a native of Pakistan. Her husband, Fazal Mahmood, applied for, and was selected to participate in, the 2001 DV

---

[1]The following facts are drawn from the complaint and taken as true for purposes of this motion.

Program. Upon notification of his selection, Mahmood submitted an application for permanent residency pursuant to the Program's instructions. Having submitted all the necessary paperwork, and following an interview with an INS hearing officer, Mahmood was issued a diversity visa and granted permanent residence on or about February 16, 2001.

On April 25, 2001, Khan submitted a "derivative" application for permanent residence based on her husband's application. On August 3, 2001, Khan's counsel made a request to the INS to schedule an interview. Khan, accompanied by counsel, appeared for an interview at the INS's Chicago office on September 28, 2001 (two days before her visa application would expire). At the interview, an INS hearing officer indicated that Khan "would be approved for permanent residency," but first she (the officer) had to order a "visa number" from the State Department and await receipt of a "visa package." The INS officer assured Khan that the approval from the State Department would be backdated to the date of the interview to allow issuance of the visa prior to the end of the fiscal year. On September 28, 2001, a request for an immigrant visa number was sent by the INS's Chicago office to the State Department, which, in turn, returned the request indicating that a visa number was available for Khan.

On October 1, 2001, Khan's counsel visited the INS's Chicago office to inquire on the status of Khan's application.

Counsel was informed by an INS supervisor that the officer who had interviewed Khan had been transferred to another office. However, the supervisor told counsel that another officer would finish processing the application, and further, that the approval from the State Department would indeed be backdated to the date of the interview. Between October 4 and December 5, 2001, counsel made seven more in-person inquires at the INS's Chicago office. On each occasion, an INS officer or supervisor confirmed that the State Department approval would be forthcoming and would be backdated. Unbeknownst to Khan or her counsel, the INS had cancelled their request for a visa number for Khan on October 26, 2001.

Then, on January 4, 2002, Khan received a notice of the INS's decision to deny her application for permanent residency on the stated ground that she failed to appear for an interview scheduled for January 2, 2002. Khan, however, never received notice of any interview other than the one that took place on September 28, 2001. Khan's counsel followed up with the INS, which "re-opened" her case on January 17, 2002. On March 15, 2002, the INS informed counsel that it would be denying Khan's application for permanent residency. On or about October 16, 2002, Khan received a letter dated March 15, 2002 denying her application. The letter, titled "decision on application for adjustment to permanent resident," cited section 204(a)(1)(G)(ii)(II) of the Immigration and Nationality Act ("[a]liens who qualify, through

random selection, for a visa under section 203(c) shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected") and went on to conclude that because "[y]ou were not approved for an immigrant visa before September 30, 1996 [sic]. . . . an approved visa is not available to you." (See Compl., Ex. D, March 15, 2002 INS denial letter.).[2]

On February 12, 2003, Khan filed a complaint seeking the following relief: (i) "compel[] defendants to reopen and approve the application for adjustment of status," and (ii) "declare that there are no just grounds to suspend issuance of all appropriate documents, including the issuance of a visa, to Plaintiff."[3] (See Compl., p. 8.) Khan seeks to invoke this court's jurisdiction under 28 U.S.C. § 1361 (mandamus jurisdiction), 28 U.S.C. § 1331 (federal question jurisdiction), and 5 U.S.C. § 704 (the Administrative Procedure Act). Defendants have filed a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

---

[2]We understand the letter to mean that Khan's application was denied because she was not approved for a visa before September 30, 2001.

[3]In her response brief, Khan also claims that the INS's denial of her application violated her due process rights. See Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999) (A plaintiff may raise the legal basis for a claim for the first time in a response to a motion to dismiss, provided the facts alleged in the complaint would support relief.)

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.), cert. denied, 519 U.S. 1008 (1996).

Similarly, when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court again accepts as true all well-pled factual allegations and draws reasonable inferences therefrom in favor of the plaintiff. Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993). The court may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject matter jurisdiction exists. Id.

We first take up defendants' assertion that this court lacks subject matter jurisdiction. Defendants present three arguments. First, they argue that section 242(a)(2)(B)(i) of the Immigration and Nationality Act precludes this court from reviewing the INS's decision to deny Khan's application for adjustment of status. See 8 U.S.C. § 1252(a)(2)(B) ("Notwithstanding any other provision of law, no court shall have jurisdiction to review-(i) any judgment regarding the granting of relief under section . . . . 1255 of this title, or (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . .") Second, defendants contend that this court lacks jurisdiction because Khan has failed to exhaust her administrative remedies. See, e.g., 8 U.S.C. § 1252(d) (providing for judicial review of final orders where the alien has exhausted administrative remedies). Finally, defendants submit that the court lacks mandamus jurisdiction because the INS had no "duty" to adjudicate the adjustment of status applications prior expiration of the visas. See Scalise v. Thornburgh, 891 F.2d 640, 648 (7th Cir. 1989) (Mandamus relief will be granted if the plaintiff can demonstrate: (i) a clear right to the relief sought; (ii) that the defendant has a duty to do the act in question; and (iii) that no other adequate remedy is available.)

Defendants have overlooked an important step in the

jurisdictional analysis. In addition to *statutory* limits on a federal jurisdiction, on which defendants focus, there are *constitutional* limits as well. Article III of the Constitution defines federal judicial power in terms of categories of "Cases" and "Controversies." U.S. Const., art. III, § 2. The "case or controversy" requirement imposes substantial constitutional limitations on federal courts. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 395 (1980). One such limitation is the justiciability doctrine of mootness. A case is moot if "there is no possible relief which the court could order that would benefit the party seeking it." McKinney v. Indiana Michigan Power Co., 113 F.3d 770, 772 (7th Cir. 1997). And when a case is moot, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971).

Khan is asking this court, under various assertions of statutory jurisdiction, to compel the INS to reopen her application and to issue her a visa. However, under 8 U.S.C. § 1154(a)(1)(I)(ii)(II), DV Program participants "remain eligible to receive visas only through the end of the specific fiscal year for which they were selected." Therefore, as a matter of law, Khan's eligibility for a diversity visa expired at midnight on September 30, 2001. Moreover, the INS lacks the power to extend this deadline. See 22 C.F.R. § 42.33(a)(1) ("The eligibility for a visa

. . . ceases at the end of the fiscal year in question. Under no circumstances may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility."); 22 C.F.R. § 42.33(e) ("A petition . . . shall be valid until Midnight of the last day of the fiscal year for which the petition was submitted. At that time, the petition is automatically revoked . . . and no diversity visa numbers can be allotted after that date."); 22 C.F.R. § 42.33(g) (Diversity immigrant visa numbers "shall be allotted only during the fiscal year for which a petition to accord diversity immigrant status was submitted and approved. Under no circumstances shall immigrant visa numbers be allotted after Midnight of the last day of the fiscal year for which the petition was submitted and approved."). It is plain, then, that the INS may no longer issue the visa requested by Khan. And because the remedy she seeks is not available, her claim does not present a justiciable "case or controversy," and must be dismissed as moot. See Iddir v. INS, 301 F.3d 492, 502 (7th Cir. 2002) (Flaum, C.J.) (concurring); Nyaga v. Ashcroft, 323 F.3d 906, 916 (11th Cir. 2003).[4]

---

[4]Even if this court had jurisdiction to consider Khan's claims, we would dismiss them on the merits. Briefly, mandamus relief is available only if the plaintiff can demonstrate: (i) a clear right to the relief sought; (ii) that the defendant has a duty to do the act in question; and (iii) that no other adequate remedy is available. Scalise, 891 F.2d at 648. Just as 8 U.S.C. § 1154(a)(1)(I)(ii)(II) dooms Khan's claim from a jurisdictional perspective, it also prevents us from granting her any mandamus relief. See Ahmed v. Dept. of

-11-

## CONCLUSION

For the foregoing reasons, defendants' motion is granted and the case is dismissed for lack of subject matter jurisdiction.


DATE:    August 26, 2004

ENTER:   _____

John F. Grady, United States District Judge

---

Homeland Security, 328 F.3d 383, 388 (7th Cir. 2003) (confirming that a denial of mandamus relief is a decision on the merits and not one for lack of subject matter jurisdiction).  Simply, because the INS's duty to adjudicate Khan's application ceased on September 30, 2001, she cannot make the necessary showing under the second prong of the mandamus test.  See Iddir, 301 F.3d at 500-01.  Next, under the Administrative Procedures Act, "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. However, denial of an adjustment status application is not made reviewable by statute and it is not a final action, so the APA provides no relief.  See Afsharzadehyadzi v. Perryman, 214 F.Supp.2d 884, 888 (N.D. Ill. 2002).  Finally, to make out a claim for denial of due process, Khan first must demonstrate that she had either property or liberty interest in an immigration visa.  It is clear, however, that neither exists.  See id. at 889.